UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KERRY LAYNE TYLER,<br><br>      Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>      Defendant. | Case No. 3:12-cv-06013-RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for December 13, 2013 |

  Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

  On May 26, 2009, plaintiff filed an application for disability insurance benefits and on May 27, 2009, he filed another one for SSI benefits, alleging in both applications that he became

REPORT AND RECOMMENDATION - 1

disabled beginning December 8, 2006, due to diabetes, depression and multiple back injuries. See ECF #13, Administrative Record ("AR") 22, 194.  Both applications were denied upon initial administrative review on August 20, 2009, and on reconsideration on November 12, 2009. See AR 22.  A hearing was held before an administrative law judge ("ALJ") on September 9, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 41-69.

      In a decision dated September 23, 2011, the ALJ determined plaintiff to be not disabled. See AR 22-33.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 1, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On December 6, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3.  The administrative record was filed with the Court on February 15, 2013. See ECF #13.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

      Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in giving insufficient reasons for rejecting the opinion of examining psychologist, Tasmyn Bowes, Psy.D.; (2) in giving insufficient reasons for discounting plaintiff's credibility; (3) in relying on an incomplete residual functional capacity ("RFC") assessment; (4) in relying on an incomplete hypothetical question posed to the vocational expert; and (5) in finding plaintiff to be capable of performing jobs that were beyond his mental RFC.  For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision to deny benefits be affirmed.

REPORT AND RECOMMENDATION - 2

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must

REPORT AND RECOMMENDATION - 3

I.        The ALJ's Rejection of the Opinion of Dr. Bowes

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can

---

> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In regard to the medical opinion evidence in the record, the ALJ found in relevant part as follows:

> Tasmyn Bowes, PsyD conducted a psychological evaluation in June 2010. The claimant reported having many subjective symptoms of depression but that he has never had any therapy.  (Ex. 12F/1).  She diagnosed major depressive disorder, recurrent, severe without psychotic symptoms, cocaine dependence in sustained full remission by report, and a [global assessment of

REPORT AND RECOMMENDATION - 5

> functioning ("GAF") score] of 33[2] based on the claimant's report that he was preoccupied with ending his life. (Ex. 12F/6). This GAF score is given little weight because it is not consistent with the claimant's reports that he has no history of suicide attempts, except for three times when he got large amounts of cocaine with the intent of killing himself, and he had no immediate plan or intent. (Ex. 12F/1). Further, she noted the cognitive factors and social factors were only mild to moderate in severity, except she found he had difficulty persisting. (Ex. 12F/5). However, this is inconsistent with [examining psychologist] Dr. [Kathleen S.] Mayers' [August 4, 2009] opinion and appears to be based solely on a subjective report that the claimant does not perform basic activities of daily living, which is inconsistent with the claimant's function report . . . showing that he is able to perform many basic daily activities such as driving, cooking, and shopping.

AR 30. Plaintiff argues these reasons for rejecting Dr. Bowes' opinion are not legally sufficient. Specifically, plaintiff asserts the ALJ erred in giving more weight to the opinion of Dr. Mayers – as well as the non-examining medical sources in the record who relied thereon – because that opinion was provided 10 months prior to the date Dr. Bowes gave her own opinion and to the period of time when the record shows plaintiff experienced a deterioration in her condition. The undersigned disagrees, however, that the reliable medical evidence in the record establishes the existence of such deterioration, or that to the extent evidence of deterioration does exist, it lasted long enough to call into question the ALJ's ultimate disability determination.[3]

As support for his assertion that his condition deteriorated after Dr. Mayers provided her opinion, plaintiff first points to the GAF score of 33 Dr. Bowes gave him. As noted by the ALJ, though, Dr. Bowes based that score on plaintiff's own subjective report that he was preoccupied

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." See White v. Commissioner of Social Sec., 572 F.3d 272, 276 (6th Cir. 2009) (quoting Edwards v. Barnhart, 383 F.Supp.2d 920, 924 n. 1 (E.D.Mich. 2005)).

[3] Although not expressly addressed by the ALJ in her decision, Dr. Bowes found plaintiff would have the functional limitations she assessed for a maximum of only eight months, which is largely consistent with the improvement in depression reported by plaintiff in February and March 2011, noted by the ALJ and discussed further below. See AR 29, 432, 496, 498;

REPORT AND RECOMMENDATION - 6

with ending his life, while plaintiff himself reported having no immediate plan or intent to act on his suicidal preoccupation.[4] See AR 431. While Dr. Bowes did note plaintiff experienced both suicidal ideation and social isolation that were marked in severity (see AR 429), again as pointed out by the ALJ, plaintiff expressed no immediate plan or intent to act that would indicate a GAF score of 33 was warranted at the time of the evaluation.[5]

As further noted by the ALJ, all but one of the mental functional limitations Dr. Bowes assessed were only mild to moderate in severity – which clearly is inconsistent with a GAF score of 33 – and the marked limitation in the ability to persist Dr. Bowes noted is at odds with the lack of restriction in that area found by Dr. Mayers.[6] See AR 392, 430. Dr. Bowes did perform psychological testing that suggested mild to severe impairment (see AR 433), but the notations Dr. Bowes made throughout his opinion reveal he relied overall primarily on the subjective self-reporting of plaintiff as found by the ALJ (see AR 426-33). Given that as discussed in greater detail below the ALJ did not err in discounting plaintiff's credibility, the ALJ properly rejected that opinion in part on this basis.[7]

---

[4] A medical source's opinion may be rejected where it conflicts with the claimant's self-reporting. See Morgan, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion); Magallanes, 881 F.2d at 754 (finding ALJ properly rejected opinion of physician in part on basis that it conflicted with claimant's own subjective pain complaints).

[5] See Wentzek v. Colvin, 2013 WL 4742993, *8 (D.Or. Sept. 3, 2013) ("The GAF scale is a tool for reporting the clinician's judgment of the individual's overall level of functioning; accordingly, a GAF score reflects a snapshot of a claimant's presentation on the day of the examination.") (quoting Davis v. Astrue, 2012 WL 4005553, *9 (D.Or. June 12, 2012), adopted by 2012 WL 3614310 (D.Or. Aug. 21, 2012) (quoting Chapman v. Astrue, 2009 WL 3046025, *4 (D.Or. July 30, 2009); and American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) (internal quotations omitted))).

[6] The opinion of Dr. Mayers fails to support the moderate level of limitation in the other functional areas noted by Dr. Bowes as well. See AR 392; Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (finding that where opinion of examining physician is based on independent clinical findings, it is within ALJ's discretion to disregard conflicting opinion in another examining physician's diagnosis).

[7] A physician's opinion premised primarily on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the credibility of the claimant. See Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d 595 at 601.

REPORT AND RECOMMENDATION - 7

Plaintiff also relies on the findings of marked depression, repeated suicidal ideation and GAF score of 35 noted at an intake evaluation performed in late July 2010. See AR 372, 376.  In regard to that intake evaluation, the ALJ stated that the mental status examination performed at the time was "overall within normal limits," and that he was giving the above GAF score "little weight because it was based mainly on [his] subjective reports, was inconsistent with the mental status exam and with the overall record, and was not made by an acceptable medical source." AR 28.  Again as discussed in greater detail below, given that the ALJ did not err in discounting plaintiff's credibility, the ALJ also did not err in discounting the GAF of 35 – which as noted above is a subjective determination of the individual's level of functioning – on this basis.  In addition, while as noted by plaintiff some marked symptoms were found on mental status examination, it was not unreasonable for the ALJ to view that examination overall as being within normal limits. See AR 367-69.  Given that the intake evaluation was from a non-acceptable medical source, furthermore, here too the ALJ did not err in relying instead on other evidence in the record from those who are acceptable medical sources, such as Dr. Mayers, indicating greater mental functional capabilities. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d).

Plaintiff next points to a mid-September evaluation note from David A. Harrison, M.D., Ph.D., in which plaintiff was noted to have severe depressive symptoms, to have moderate anxiety symptoms, to be chronically suicidal, and to have reported planning to kill himself if he did not receive disability benefits. See AR 456.  But as noted by the ALJ, Dr. Harrison found plaintiff to actually be "somewhat less depressed" and "less anxious" clinically. AR 29, 456.  In addition, although plaintiff reported "[m]ultiple plans" to commit suicide, this was noted to be "without intent" and with "no history of self-harm behaviors." AR 456.  As such, plaintiff has

REPORT AND RECOMMENDATION - 8

failed to show error on the part of the ALJ to treat this as evidence of significant mental health deterioration supportive of greater or more severe functional limitations.

Lastly, plaintiff relies on the opinions of Kimberly Wheeler, Ph.D., and Dana Early, BS, with respect to which the ALJ found in relevant part as follows:

> Kimberly Wheeler, PhD, conducted a psychological evaluation in December 2010. She diagnosed marked/major depression, alcohol abuse in tentative early remission, cannabis abuse in early remission, and cocaine abuse in sustained remission, and a GAF [score] of 50 indicating moderate to serious symptoms. (Ex. 1F/2). Even still, Dr. Wheeler opined that the claimant's symptoms of depression, poor sleep, low energy, and social isolation were only mild to moderate. (Id). She also opined that his functional limitations in terms of cognition and social factors were only in the mild to moderate range as well. (Ex. 1F/3). Dr. Wheeler failed to provide a medical source statement and the mental status examination was mostly normal, except for some problems noted with speech being slow, affect being restricted, thought processes being slow, thought content being negative, and attention being somewhat poor. (Ex. 1F/4). However, these problems have not been reported by other examiners. (Ex. 1F/4). Overall, this opinion is given only some weight because it is internally inconsistent for instance, Dr. Wheeler diagnosed marked depression but found that his symptoms of depression were only mild to moderate.
>
> Dana Early, BS . . . provided a medical source statement . . . She opined that the claimant had mostly marked impairments in his ability to sustain concentration, persistence, or pace (CPP); and mostly moderate impairments in his abilities to interact with others and adapt. She further noted that his symptoms had been at this severity since at least July 2010, which is not consistent with the claimant's alleged onset date. This opinion is given little weight because Ms. Early does not provide support for her findings and her opinion regarding CPP is inconsistent with Dr. Mayers' above opinion that his persistence and concentration were good.

AR 31. Plaintiff does not provide any specific argument as to why the ALJ's stated reasons for not fully adopting the above opinion evidence were proper.[8] Further, the undersigned finds there

---

[8] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

REPORT AND RECOMMENDATION - 9

is nothing improper in regard to those reasons.[9] Here too, therefore, the ALJ was not obligated to view either opinion as evidence of deterioration in plaintiff's mental health condition or that greater functional limitations should be assessed. In addition, as noted above, to the extent there is ambiguity or conflict in the evidence concerning the existence of such deterioration, it is solely the ALJ's responsibility to resolve. Indeed, given that as noted by the ALJ plaintiff denied being depressed or feeling down or hopeless in February 2011, and again one month later, the ALJ did not commit any error in interpreting that evidence as she did.[10] See AR 29, 496, 498.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

---

[9] Discrepancies between a medical opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding a claimants capabilities "is a clear and convincing reason for not relying" on the assessment. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); see also Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989). An ALJ also need not accept the opinion of even a treating physician if that opinion is inadequately supported by clinical findings or "the record as a whole." Batson, 359 F.3d at 1195.

[10] To the extent plaintiff's own interpretation of that same evidence contains some plausibility, furthermore, as also noted above "[i]f the evidence admits of more than one rational interpretation" the ALJ's decision must be upheld, and "[w]here there is conflicting evidence sufficient to support either outcome," then "the decision actually made" must be upheld. Allen, 749 F.2d at 579 (quoting Rhinehart, 438 F.2d at 921).

REPORT AND RECOMMENDATION - 10

Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ in this case discounted plaintiff's credibility in part because the evidence in the record showed improvement in plaintiff's allegedly disabling physical impairments, which was a valid basis for doing so. See AR 27-28; see also Morgan, 169 F.3d at 599; Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The ALJ also noted the medical evidence in the record was not consistent with plaintiff's claims regarding those impairments. See AR 28.  A determination by the ALJ that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Further, the ALJ pointed to a lack of mental health treatment in the record for the period prior to July 2010, more than three and a half years after the alleged onset date of disability. See AR 28.  Failure to assert a good reason for not seeking treatment "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  Although plaintiff argues the ALJ failed to provide clear and convincing reasons for

REPORT AND RECOMMENDATION - 11

not finding him credible, he offers no specific argument[11] that the substantial evidence in the record does not support the ALJ here.[12]

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all

---

[11] See Carmickle, 533 F.3d at 1161 n.2 (issue not argued with specificity in briefing will not be addressed); Paladin, 328 F.3d at 1164 (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim, 154 F.3d at 1000 (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

[12] Plaintiff does assert "[t]he ALJ here gave a host of general reasons but did not cite specific evidence to refute [his] claims that he left work because he could not keep up mentally . . . , when he had trouble concentrating (as revealed graphically in losing track during his testimony . . . , and he was depressed and lethargic." ECF #18, p. 10 (citing AR 46 and 51 of hearing transcript).  But there is no requirement that the ALJ cite evidence to refute every claim made by a claimant.  Indeed, as noted above, the Ninth Circuit has held that the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  This is exactly what the ALJ did here as discussed above. See also AR 29-30 (pointing to several inconsistencies in the record between plaintiff's alleged symptoms and limitations and his actual demonstrated functional capabilities).  The lack of mental health treatment for a significant portion of the time period during which plaintiff has claimed to be disabled, furthermore, does directly refute plaintiff's testimony with respect to the above-noted mental health symptoms, particularly his claim that he left work because he was unable to keep up mentally.

REPORT AND RECOMMENDATION - 12

of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . except [he] is capable of simple, routine tasks with 1-2 step instructions.  He can occasionally climb ramps and stairs but should never climb ladders, ropes, or scaffolds.  He can occasionally balance, stoop, and crouch but should never crawl or kneel.  He should avoid concentrated exposure to vibration and hazards such as heights and moving machinery.**

AR 27 (emphasis in original).  Plaintiff argues the above RFC assessment is incomplete because it does not include all of the mental functional limitations Dr. Bowes' opinion supports.  As discussed above, however, the ALJ did not err in rejecting that opinion.  Plaintiff thus has failed to show the ALJ's assessment of his residual functional capacity is not supported by substantial evidence or that the ALJ otherwise erred in making it.

IV.     The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

REPORT AND RECOMMENDATION - 13

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 65. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 66. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 32-33. As he did in regard to the ALJ's RFC assessment, plaintiff argues the hypothetical question the ALJ posed is incomplete because it does not reflect all of the mental functional limitations the opinion of Dr. Bowes reflects. But as discussed above, the ALJ did not err in rejecting that opinion, and accordingly this argument fails to provide a valid basis for asserting error here as well.

Plaintiff goes on to argue that the jobs the vocational expert identified that he could do in response to the hypothetical question require Level 2 reasoning (see AR 66; see also Dictionary of Occupational Titles ("DOT") 728.684-022; DOT 920.685-026; DOT 726.687-010), whereas the limitation to work involving simple, routine tasks with one-to-two step instructions assessed

REPORT AND RECOMMENDATION - 14

by the ALJ "precisely matches" the definition of Level 1 reasoning (see ECF #18, p. 3; DOT, Appendix C, 1991 WL 688702).[13]  The undersigned disagrees.  Several courts have found Level 2 reasoning to be consistent with the ability to do simple, routine and/or repetitive work tasks. See, e.g., Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding Level 2 reasoning to be more consistent with limitation to simple, routine work tasks); Meissl v. Barnhart, 403 F.Supp.2d 981, 983-85 (C.D. Cal. 2005) (finding limitation to simple and repetitive tasks to be closer to Level 2 reasoning); Flaherty v. Halter, 182 F.Supp.2d 824, 850-51 (D. Minn. 2001) (finding Level 2 reasoning did not conflict with limitation to work involving simple, routine, repetitive, concrete, and tangible tasks).

There is at least one court that appears to disagree with the position taken by those above. See Lucy v. Chater, 113 F.3d 905, 909 (8th Cir. 1997) (rejecting contention that claimant who is limited to following only simple instructions can engage in full range of sedentary work because many unskilled jobs in that category require reasoning levels of 2 or higher).  However, the undersigned finds more persuasive the discussion of this issue made by the United States District Court for the Central District of California:

> This leaves the question of whether the vocational expert's opinion contradicted the DOT's descriptions for Meissl's other work as a stuffer given the ALJ's RFC finding limiting Meissl to "simple, repetitive" tasks. The Court finds that it does not.

---

[13] The DOT defines Level 1 and Level 2 reasoning as follows:

 LEVEL 2

Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

LEVEL 1

Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

Id.

REPORT AND RECOMMENDATION - 15

As one goes up the numerical reasoning development scale used by the DOT, the level of detail involved in performing the job increases while the job task becomes less routine. For example, a job with a reasoning level of one only requires that the worker be able to "[a]pply commonsense understanding to carry out simple one-or two-step instructions" in "standardized situations with occasional or no variables." DOT at 1011. In contrast, a job with a reasoning level of three would require that the worker "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and deal "with problems involving several concrete variables ...." DOT at 1011. The middle ground between these two points is also where the vocational expert identified a job with the lowest reasoning development score that Meissl could perform, namely a stuffer.

A job with a reasoning level of two requires that the worker "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and deal with problems "involving a few concrete variables ...." DOT at 1011. Thus, such a job would involve more detail, as well as a few more variables, than that with a reasoning level of one. The question becomes whether a person limited to carrying out simple, repetitive instructions could still perform a job with such a reasoning score.

Meissl focuses on the fact that the DOT description for a reasoning level of 2 uses the word "detailed." Essentially, Meissl seeks to equate the DOT's use of the word "detailed" with the Social Security regulations' use of the word "detailed instructions" in formulating a claimant's mental RFC. The Court is not convinced that such a neat, one-to-one parallel exists between the two.

The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); *see also* 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking ... apprehend the most abstruse classes of concepts" at level six). DOT at 1010-1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

REPORT AND RECOMMENDATION - 16

Even more problematic for Meissl's position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

Here, the ALJ found that Meissl could perform not just simple tasks but also ones that had some element of repetitiveness to them. A reasoning level of one on the DOT scale requires slightly less than this level of reasoning. While reasoning level two notes the worker must be able to follow "detailed" instructions, it also (as previously noted) downplayed the rigorousness of those instructions by labeling them as being "uninvolved."

The Court finds that there is much to recommend for believing that Meissl's reasoning level is at level two rather than at level one. A reasoning level of one indicates, both by the fact that it is the lowest rung on the development scale as well as the fairly limited reasoning required to do the job, as applying to the most elementary of occupations; only the slightest bit of rote reasoning being required. For example, the DOT describes the following jobs as requiring only a reasoning level of one: Counting cows as they come off a truck (job title Checker (motor trans.)); pasting labels on filled whiskey bottles (job title Bottling-Line Attendant (beverage)); and tapping the lid of cans with a stick (job title Vacuum Tester, Cans). *See* DOT at 931, 936, 938. Someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed. Other courts have so held. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir.2005) (holding that "level-two reasoning appears more consistent with Plaintiff's RFC" to "simple and routine work tasks"); *Money v. Barnhart*, 91 Fed.Appx. 210, 214, 2004 WL 362291, at *3 (3rd Cir.2004) ("Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive"). As one court explained:

The ALJ's limitation for the Plaintiff, with respect to an appropriate reasoning level, was that she could perform work which involved simple, routine, repetitive, concrete, tangible tasks. Therefore, the DOT's level two reasoning requirement did not conflict with the ALJ's prescribed limitation. Although the DOT definition does state that the job requires the understanding to carry out detailed instructions, it specifically caveats that the instructions would be uninvolved-that is, not a high level of reasoning.

*Flaherty v. Halter*, 182 F.Supp.2d 824, 850 (D.Minn.2001).

Meissl, 403 F.Supp.2d at 983-85.

REPORT AND RECOMMENDATION - 17

As the Meissl court noted Level 1 reasoning is "the lowest rung on the development scale" that involves "fairly limited reasoning required to do the job," and is to be applied to "the most elementary of occupations" with "only the slightest bit of rote reasoning being required." Id. at 984. It is true that in finding the claimant in that case could perform Level 2 reasoning, the Meissl court focused on the ALJ's finding that the claimant could do "not just simple tasks but also ones that had some element of repetitiveness to them." Id. While it also is true that the ALJ here made no such finding regarding repetitiveness, she gave no indication that she intended to limit plaintiff to those type of jobs requiring "only the slightest bit of rote reasoning." As such, while the ALJ did err in failing to ask the vocational expert whether his testimony conflicted with the information contained in the DOT,[14] the undersigned finds that error to be harmless as there was no conflict at step five, and thus even had the ALJ conducted the appropriate inquiry here, it would not change the outcome of this case.[15]

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file

---

[14] The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony and information in the DOT. Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704. Before relying on evidence obtained from a vocational expert to support a finding of not disabled, therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; SSR 00-4p, 2000 WL 189704 *1.

[15] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

REPORT AND RECOMMENDATION - 18

objections will result in a waiver of those objections for purposes of appeal. See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **December 13, 2013**, as noted in the caption.

DATED this 25th day of November, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19